UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIE MOSES ADKINS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 08 C 0815 |
| | ) | |
| v. | ) | Judge Charles R. Norgle, Sr. |
| | ) | |
| ROGER WALKER, DIRECTOR, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Willie Moses Adkins, an inmate at Stateville Correctional Center, filed suit, *pro se*, against multiple Defendants, alleging deliberate indifference to his medical needs related to his dialysis treatments. Presently pending before the Court is Defendant, Parthasarathi Ghosh's motion for summary judgment, motion to deem facts admitted, and motion to strike Plaintiff's unsupported conclusions and immaterial documents. For the reasons stated in this order, Dr. Ghosh's motion for summary judgment is granted, as is his motion to deem facts admitted and to strike Plaintiff's unsupported conclusions and immaterial documents.

## LEGAL STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). All of the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). However, a party cannot defeat summary judgment by relying on unsubstantiated facts or by merely resting on its pleadings. *See Hemsworth, II v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Greer v. Board of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001). Instead, the party that bears the burden of proof on an issue must affirmatively demonstrate, with admissible evidence, that a genuine issue of material fact exists that requires a trial. *See Hemsworth*, 476 F.3d at 490.

When Defendant filed his motion for summary judgment, he included a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992); *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982). This notice clearly sets out the requirements of this Court's Local Rule 56.1 (N.D. Ill.). In particular, the notice explains that Plaintiff's response must comply with Federal Rule of Civil Procedure 56(e) and Local Rule 56.1.

Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file:

> (3) a concise response to the movant's statement that shall contain
>
> (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
>
> (B) a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b).

The district court may require strict compliance with Local Rule 56.1. *See Ammons v. Aramark Uniform Serv., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004); *Bordelon v. Chicago School Reform Board of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000) (strict compliance with the local rules

governing summary judgment is upheld given the importance of local rules that structure the summary judgment process); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs"). The court may disregard statements and responses that do not comply with Local Rule 56.1. *See Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809-10 (7th Cir. 2005).

Although *pro se* plaintiffs are entitled to lenient standards, compliance with procedural rules is required. *Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998) ("[R]ules apply to uncounseled litigants and must be enforced"); *accord, Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir.1994); *Fischer v. Ameritech*, No. 98 C 7470, 2002 WL 1949726, *4 (N.D. Ill. Aug. 23, 2002) (Pallmeyer, J.).

Despite being given this notice, Plaintiff's response to Dr. Ghosh's motion and proposed statement of undisputed facts consists of 10 numbered paragraphs and 17 pages of exhibits. The numbered paragraphs do not address Dr. Ghosh's proposed undisputed facts, but rather are conclusory statements that do not reference any of the exhibits for support or merely indicate the relief requested. For example, paragraph one reads: "The Defendants fabricated numbers dialysis refusals." Paragraph eight seeks the denial of Dr. Ghosh's motion. Contrary to Local Rule 56.1(b)(3), Plaintiff fails to support any disagreement with the proposed L.R. 56.1(a) statements with any specific references to the affidavits, parts of the record, or other supporting materials that he is relying on to dispute any proposed undisputed facts. Furthermore, Plaintiff does not indicate how any of the exhibits he provided are relevant to the issues before the Court. For example, Plaintiff includes newspaper articles, including one regarding the Nebraska Department of Corrections. Accordingly, Dr. Ghosh's motion to deem facts admitted and to strike Plaintiff's unsupported conclusions and immaterial documents is granted and his proposed statements of fact are deemed

admitted. *See Chelios v. Heavener*, 520 F.3d 678, 687 (7th Cir. 2008); L.R. 56.1(b)(3)(B).

## FACTS

Dr. Ghosh, has been employed at Stateville since June of 2003, and is licensed to practice medicine in Illinois since 1978. (Def.'s 56.1(a)(3) Statement ¶ 3.) In the course of his medical practice at Stateville, he has treated countless inmates, including Plaintiff. (*Id.*, at ¶ 4.)

Plaintiff was diagnosed as having end-stage renal disease and has received medical care, including routine dialysis since, 1992 or 1993. (Def.'s 56.1(a)(3) Statement ¶ 8.) Plaintiff has received medical care while an inmate at Stateville and at the Graham Correctional Center, where he has been housed several times over the last several years due to his segregation status. (*Id.*, ¶ 5.)

Chardonnay Dialysis, Inc., has been under contract to provide dialysis treatment to inmates at Stateville, including Plaintiff, at all relevant times. (Def.'s 56.1(a)(3) Statement ¶ 9.) Chardonnay provides the equipment and medical professionals, including nurses and a nephrologist, Dr. David McFadden, to administer and oversee the dialysis treatment that is provided to inmates at Stateville, including Plaintiff. (*Id.*, ¶ 10.) Insofar as Plaintiff has been under the care of a nephrologist for his renal condition, and Chardonnay has been under contract to provide dialysis treatments to Plaintiff, Dr. Ghosh is not, and has not, been responsible for Plaintiff's dialysis treatment. Nor does Dr. Ghosh have any role in the administration of Plaintiff's dialysis treatments. (*Id.*, ¶ 11.) Dr. Ghosh does not employ any medical professionals who provide dialysis treatment to Plaintiff and he is not responsible for the operation or repair of the dialysis equipment that is used to provide Plaintiff's dialysis treatments. (*Id.*, ¶¶ 12-13.)

Dialysis involves the passage of the patient's blood from the circulatory system into the dialysis machine, where it is circulated through a device that acts to remove certain impurities and

4

excess fluids from the blood. Although long-term dialysis treatment will not cure renal disease, it is offered as a substitute to carry out some of the functions that the kidneys are no longer able to perform. (Def.'s 56.1(a)(3) Statement ¶ 14.) Plaintiff has been offered dialysis treatment from Chardonnay on an approximately three-times per week basis with a blood flow rate between 400 and 500, depending upon the recommendations of Dr. McFadden. (*Id.*, at ¶ 15.) The Chardonnay medical staff records the details of each of Plaintiff's dialysis treatments on dialysis forms. (*Id.*, ¶ 16.) The dialysis forms for December 29, 2007, December 31, 2007, and March 1, 2008, document that the blood flow rate during these dialysis sessions was between 400-500. (*Id.*, ¶ 17.) There is no record of Plaintiff receiving dialysis treatment on December 30, 2007, likely because that day was a Sunday. (*Id.*, ¶ 18.) The dialysis forms document that for each dialysis session that Plaintiff underwent, his skin was cleansed with alcohol prior to his dialysis treatments and dressed with bandages following his dialysis treatments, in accordance with dialysis protocol. (*Id.*, ¶ 19.)

In the sixteen-seventeen years that Plaintiff has been undergoing dialysis treatments, he has received extensive education regarding the risks associated with his refusal of dialysis treatment, which include, but are not limited to, toxicity, fluid overload and/or possible death. (Def.'s 56.1(a)(3) Statement ¶ 20.) Since January 1, 2004, there are at least 487 Refusal of Treatment Against Medical Advice Chardonnay Dialysis, Inc., Forms in Plaintiff's medical file documenting Plaintiff's refusal of medical treatment for his renal condition. (*Id.*, ¶ 22.) Since 2007, Plaintiff has also repeatedly refused his Zemplar medication, which is used to prevent and treat secondary hyperparathyroidism associated with chronic kidney disease, and Epogen medication, which is used to treat anemia in patients with chronic renal failure on dialysis. (*Id.*, ¶ 24.) Plaintiff has also refused Phoslo, which is used to treat hyperphospatemia (too much phosphate in the blood) in

patients with kidney disease, and Gentamycin, which is used following dialysis treatments to prevent infection. (*Id.*, ¶¶ 25-26.) Plaintiff has also refused other medications related to his renal condition, including: Sorbitol, which is used to irrigate the digestive system; Renagel, which is used to reduce blood levels of phosphorus in individuals with chronic kidney disease who are on dialysis; and vitamins that are specially prescribed for his renal condition. (Id., ¶¶ 35-37.) Plaintiff also has refused other treatments and evaluations that have been offered to him, including examinations by Dr. McFadden, x-rays, vaccines, fluids, and blood pressure, pule and temperature checks that are necessary for his dialysis treatments. (*Id.*, ¶ 27.)

Plaintiff is offered comprehensive laboratory testing for his renal condition through the University of Illinois, at a minimum, on a monthly basis. (Def.s' 56.1(a)(3) Statement ¶ 28.) Plaintiff has repeatedly refused the necessary laboratory testing. (Id., ¶ 29.) Plaintiff has also been placed on a renal/vegan diet with double portions plus a snack bag. (Id., ¶ 30.) Plaintiff has refused visits with a registered dietician although his renal condition necessitates the above-referenced special diet. (Id., ¶ 31.)

In addition to receiving routine dialysis treatment from Chardonnay, Dr. Ghosh has approved Plaintiff to be seen at the University of Illinois for his renal condition on May 1-2, 2007, for testing and treatment to rule out an obstruction of the upper right extremity AV-fistula and inpatient dialysis, and on November 7, 2008, for a diagnostic fistulogram which revealed a "well-functioning right forearm AV fistula." (Def.'s 56.1(a)(3) Statement ¶¶ 34, 39.) Dr Ghosh has routinely approved the recommendations by Plaintiff's doctors and specialists that he receives treatment from, including his nephrologist, Dr. McFadden. (Id., ¶ 41.) The professionals at the University of Illinois and other specialists Dr. Ghosh has referred Plaintiff to see, consistently report that Plaintiff is "feeling well,"

has "no complaints," is in stable condition, and that he only requires dialysis treatments and medication management. (Id., ¶ 40.)

Plaintiff has received extensive medical treatment for other medical conditions, including a congenital heart condition and coronary heart disease. (Def.'s 56.1(a)(3) Statement ¶¶ 42-44.) Plaintiff receives various medications for the treatment of his medical conditions, including: Neurotin, Zemplar, Epogen, Aluminum Hydroxide, Amphogel, MVI, Acetaminophen, Naproxen, Coreg, Lisinopril, Ferriecit, Novasource, Sinispar, Renagel, Heparin, Xalatan eye drops, Clonidine, Eucerin Cream, Sorbital, Amphogel, Tylenol, Gabapentin, Macanese, Vitamin A & D Ointment, Benadryl, Phoslo, Atenolol, Tums, Temormin, Alamag, Sneinitz Cream, Motrin, and Isosorbide, Minoxidil. (Id., ¶ 53.) Plaintiff has also refused routine physicals, medical treatments and medications related to medical conditions. (Id., ¶¶ 49-49, 54-57.) In addition, Plaintiff has consistently refused to be seen by medical personnel, including Dr. Ghosh. (Id., ¶¶ 51-52.)

There is no indication in Chardonnay's records that the dialysis equipment used during Plaintiff's treatment sessions was not functioning correctly. (Def.'s 56.1(a)(3) Statement ¶ 32.) Dr. Ghosh was not made aware of any problems with the dialysis equipment used by Chardonnay with Plaintiff during the relevant time period. (Id., ¶ 33.) Dr. Ghosh did not have knowledge that Plaintiff received dialysis treatment from broken dialysis machines nor has he reviewed any records or spoken to anyone who indicated that Plaintiff was receiving dialysis treatments from broken equipment. (Id., ¶ 73.) Dr. Ghosh had no knowledge that Plaintiff was forced to choose between his dialysis treatment and cardiac treatment, nor has he reviewed any records or spoken to anyone that indicate Plaintiff was forced to choose between the two treatments. (Id., ¶ 74.)

7

## ANALYSIS

The deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). A claim of deliberate indifference includes both an objective and subjective element. *See Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). As to medical care, "the objective element requires that the inmate's medical need be sufficiently serious" to implicate the Constitution. *Guiterrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). A medical need is "serious" if has been diagnosed by a physician as mandating treatment or it so obvious that even a lay person would recognize the necessity of medical treatment. *See Foelker v. Outgamie County*, 394 F.3d 510, 512 (7th Cir. 2005).

The subjective element requires that the prison official act with sufficiently culpable state of mind, "something akin to criminal recklessness." *Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006). The negligent or inadvertent failure to provide adequate medical care is not actionable under 42 U.S.C. § 1983 because such a failure is not an "unnecessary and wanton infliction of pain" that is "repugnant to the conscience of mankind." *Estelle*, 429 U.S. at 106. Furthermore, medical negligence is insufficient to demonstrate deliberate indifference. *See Foelker*, 394 F.3d at 513. However, a prisoner does not need to prove that the prison official "intended, hoped for, or desired the harm that transpired." *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996). Instead, it is sufficient if the prisoner demonstrates that the prison official actually knew of a substantial risk of harm to the prisoner and acted or failed to act in disregard to that risk. *See Walker*, 293 F.3d at 1037. An inmate can demonstrate that a prison official knew of a substantial risk of harm if the fact of that risk is obvious. *See Walker*, 293 F.3d at 1037. As applied to claims of deliberate indifference based on a

physician's treatment decision, "the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet*, 439 F.3d at 396. The court examines the totality of the medical care provided and isolated incidents of delay do not rise to the level of deliberate indifference. *See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000); *Gutierrez v. Peters*, 111 F.3d 1364, 1374-75 (7th Cir. 1997). Furthermore, a difference of opinion among physicians as to the proper treatment is insufficient to support a finding of deliberate indifference. *See Norfleet*, 439 F.3d at 396.

The treatment of Plaintiff's end-stage renal disease constitutes a serious medical need. However, Plaintiff has failed to demonstrate that Dr. Ghosh acted with deliberate indifference to Plaintiff's medical care as to his medical treatment. He has failed to demonstrate that Dr. Ghosh was aware of any malfunctioning or broken dialysis equipment or that he was aware that Plaintiff was forced to choose between receiving dialysis treatment or cardiac treatment. Furthermore, in light of the totality of medical care provided to Plaintiff that was approved by Dr. Ghosh to Plaintiff (as discussed above), a reasonable juror could not find that Dr. Ghosh acted with deliberate indifference to Plaintiff's medical needs. *See Walker*, 233 F.3d at 501 (given totality of medical care inmate received for his hemophilia, isolated incidents of delay in administering clotting protein could not be considered to be deliberate indifference); *Gutierrez*, 111 F.3d at 1374-75 (isolated incidents of neglect during an otherwise continuous ten-month stretch of adequate medical care *did* not rise to an inference of deliberate indifference).

## CONCLUSION

For the foregoing reasons, Dr. Ghosh's motion for summary judgment [117] and motion to deem facts admitted and to strike Plaintiff's unsupported conclusions and immaterial documents [125] are granted. At the end of the case, the Clerk is directed to enter judgment in favor of Dr. Ghosh pursuant to Fed. R. Civ. P. 56. Dr. Ghosh is terminated as a Defendant in this matter.

Dated: June 1, 2010

Charles R. Norgle, Sr.
United States District Court Judge